# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

ALCOA, INC., et al.,

      Plaintiffs,       :       Case No. 3:07-cv-274

      -vs-       Chief Magistrate Judge Michael R. Merz

      :

DELTA (SPRINGBOK), ETC., et al.,

      Defendants.

## DECISION AND ORDER

This case is before the Court on

(1)     the Motion to Dismiss of Defendant Burner Systems International, Inc. (Doc. No. 16);

(2)     the Motion to Dismiss of Defendant Sourdillon, Inc. (Doc. No. 34);

(3)     the Motion to Dismiss of Defendants Delta (Springbok) France, S.A., Delta Electrical and Engineering Holdings B.V., and Sourdillon Air Index (Doc. No. 35);

(4)     the Motion to Dismiss of Defendant Delta US (Springbok) LLC; (Doc. No. 37); and

(5)     the Amended Motion to Dismiss of Defendant Burner Systems, International (Doc. No. 58).

At Plaintiffs' request, the Court permitted limited discovery on the personal jurisdiction issues (Doc. No. 54). The parties' positions were ably argued by attorneys Burleigh Singleton for the Defendants and Benita Ellen for the Plaintiffs at oral argument on October 6, 2008 (Transcript ordered but not yet filed.)

Although these are dispositive motions by statute, the parties have unanimously consented to plenary magistrate judge jurisdiction under 28 U.S.C. § 636(c) and the case has been referred to the Magistrate Judge on that basis.

The operative pleading in question is Plaintiffs' Amended Complaint (Doc. No. 12), filed after this action was removed from the Shelby County Common Pleas Court. Plaintiffs allege in pertinent part that they or their predecessors in interest formerly did business in Ohio as "Norcold" ("Old Norcold"). Old Norcold manufactured gas-powered refrigerators and incorporating valves manufactured and sold to them by one or more of the Defendants and/or their predecessors in interest between 1987 and 1995. *Id*. at ¶ 2. In 1997 Plaintiffs sold the assets of Old Norcold to the Thetford Corporation which then began operating under the name "Norcold, Inc."("New Norcold"). *Id*. at ¶¶ 21& 22. Old Norcold alleges that one of the liabilities it retained was "liability for any product manufactured prior to the execution of the Norcold Sale Agreement. . . ." *Id*. at 23. Plaintiffs further aver that they are "legally obligated to reimburse any costs or expenses incurred by [New] Norcold relating to a recall by [New] Norcold of a product manufactured by Plaintiffs stemming from a defect in the product." *Id*. at ¶ 24.

In 2001 New Norcold advised Plaintiffs of a defect in the purchased and installed valves and in 2002 New Norcold began a recall of refrigerators with those valves. *Id*. at ¶¶ 26 & 28. Plaintiffs claim they notified Defendants in 2002 "of the defect" and gave Defendants "proper and timely notice of Plaintiffs' intent to seek indemnification from Defendants. . . ." *Id*. at ¶ 27. Sometime after January 26, 2003, and continuing through January 26, 2007, Plaintiffs made payments to New Norcold to reimburse its costs and expenses arising from the recall. *Id*. at ¶ 31. Plaintiffs aver that, pursuant to the terms of their purchase of the valves from Defendants, Defendants are "contractually obliged to indemnify Plaintiffs against loss arising from defects in the valves. . . ." *Id*. at ¶ 35.

In removing the case to this Court, Defendants asserted this Court had subject matter jurisdiction under both 28 U.S.C. § 1331 and 1332, the former because the sales in question were covered by the Convention on Contracts for the International Sale of Goods ("CISG"), a treaty to which the United States is a party, and the latter because the parties to the case were of diverse

2

citizenship with more than $75,000 in controversy (Notice of Removal, Doc. No. 2). Removal was uncontested. The Court finds that it certainly has subject matter jurisdiction under 28 U.S.C. § 1332 and thus need not decide the applicability of the CISG to determine that it can proceed.

## Personal Jurisdiction/Forum *Non Conveniens*

**Burner Systems International**

Defendant Burner Systems International, Inc. ("BSI"), avers that it is a Delaware corporation with its principal place of business in Tennessee (Declaration of John H. FitzSimons, ¶ 5, Exhibit 2 to Doc. No. 6). It avers further that it did not manufacture or sell the valves in issue, that it does not maintain an office in Ohio and is not licensed to transact business here. *Id*. at ¶¶6-7. In 2001 BSI caused the formation of a wholly-owned subsidiary, SUS Acquisition Corp., which changed its name to Sourdillon, Inc.(hereinafter "Sourdillon BSI") and then, in June, 2002, purchased some of the assets of Defendant Delta U.S. (Springbok) LLC (hereinafter "Delta U.S."). *Id*. at ¶ 9. Mr. FitzSimons avers that, under the express terms of the asset purchase agreement, neither BSI nor Sourdillon BSI assumed any of the liabilities of Delta France Springbok S.A. (fka Sourdillon S.A.), Delta U.S., or any of the Defendants. *Id*. at ¶ 10. BSI asserts that it is not subject to general personal jurisdiction in Ohio because it does not have "continuous and systematic" contacts with the State; it asserts lack of specific personal jurisdiction because it neither made nor sold the valves in question. (BSI Motion to Dismiss, Doc. No. 6)

Plaintiffs respond that BSI has sufficient minimum contacts with Ohio to support general jurisdiction, making a prima facie showing of a number of facts relevant to that determination (Brief in Opposition, Doc. No. 13, at 7.) As to specific jurisdiction, Plaintiffs assert their claims arise out

of the sale of the valves by "Sourdillon" to Old Norcold in Ohio and Sourdillon's contacts with Ohio should be imputed to BSI because BSI is successor-in-interest to "Sourdillon."  *Id*.

The party asserting a federal court has personal jurisdiction over a defendant has the burden of proving it. *CompuServe, Inc., v. Patterson,* 89 F.3d 1257 (6th Cir. 1996); *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991);  *Weller v. Cromwell Oil Co.*, 504 F.2d 927 (6th Cir. 1974). If the Court determines to decide the issue without an evidentiary hearing, however, the party need only make a *prima facie* showing *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998); *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)(quoting *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980). Although limited discovery was permitted on the personal jurisdiction question, the parties agree the prima facie standard is applicable.  The pleadings and affidavits are to be considered in the light most favorable to the plaintiff without considering defendant's controverting assertions.  *Bridgeport Music v. Still N The Water Publ'g,* 327 F.3d 472, 478 (6th Cir. 2003).

"In diversity cases, federal courts apply the law of the forum state to determine whether personal jurisdiction exists." *Nationwide Mutual Ins. Co. v. Tryg Intl. Ins. Co.,* 91 F.3d 790, 793 (6th Cir. 1996), citing *LAK, Inc., v. Deer Creek Enterprises,* 885 F.2d 1293, 1298 (6th Cir. 1989)(citing *Southern Machine Co. v. Mohasco Indus.*, 401 F.2d 374, 376, n. 2 (6th Cir. 1968).

When determining whether an Ohio court or a federal court sitting in diversity in Ohio has personal jurisdiction over a nonresident defendant, the court is obligated to (1) determine whether the state's "long-arm" statute and the applicable Civil Rule confer personal jurisdiction, and if so, (2) whether granting jurisdiction under the statute and rule would deprive the defendant of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution. *Goldstein v. Christiansen*, 70 Ohio St. 3d 232235, 638 N. E. 2d 542, 543 (1994), citing *U.S. Sprint Communications Co., Ltd. Partnership v. Mr. K's Foods, Inc.,* 68 Ohio St. 3d 181, 183-84, 624 N.E.

4

2d 1048, 1051 (1994). This analysis is not conflated into one step because Ohio's long-arm statute does not reach to the limits allowed by the Constitution. *Cole v. Mileti*, 133 F.3d 433, 436, (6th Cir. 1998), citing *Goldstein,* 638 N.E. 2d 545, n.1  On this point, *Cole* overrules a long-standing analysis of Ohio law by the Sixth Circuit.  See *In-Flight Devices v. VanDusen Air, Inc.,* 466 F.2d 220 (6th Cir. 1972); *Creech v. Roberts*, 908 F.2d 75 (6th Cir. 1990); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996).

The only statutory basis Plaintiff suggests[1] for the exercise of general jurisdiction is the long-arm statute, Ohio Revised Code §2307.382(A)(1) and (2). The statute provides in relevant part:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) Transacting any business in this state;
>
> (2) Contracting to supply goods or services in this state; . . .
>
> (C) When jurisdiction over a person is based solely on this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

When jurisdiction is founded solely on the long-arm statute, the asserted cause of action must arise from the business defendant has conducted within the state. *Berning v. BBC, Inc.*, 575 F.Supp. 1354, 1356 (S.D. Ohio 1983). There are two kinds of personal jurisdiction, general and specific. *Brunner v. Hampson,* 441 F. 3d 457, 463 (6th Cir. 2006).  However, Ohio Revised Code § 2307.382 only authorizes specific jurisdiction.  Ohio's "long-arm statute requires a 'proximate cause' relationship between a plaintiff's personal injury and the defendant's conduct in Ohio." *Brunner*, 441 F.3d at 466 (citing *Coleman v. Chen,* 712 F.Supp. 117, 117-19 (S.D.Ohio 1988) and *Cruz v. Kentucky Action Park, Inc.,* 950 F.Supp. 210, 212 (N.D.Ohio 1996))."

---

[1] Amended Complaint, Doc. No. 12, ¶ 11.

The authority cited by Plaintiff as supporting general jurisdiction under Ohio Revised Code § 2307.382 conflates the statutory and constitutional analysis and is thus outdated in light of *Brunner* and *Cole* or is otherwise inapplicable. In *LSI Industries, Inc., v. Hubbell Lighting, Inc.*, 232 F.3d 1369 (Fed. Cir. 2000), the Federal Circuit discusses Ohio long-arm law as it was understood prior to *Goldstein, supra.*; neither *Goldstein* nor *Cole, supra*, is cited. Additionally, the Court was considering whether there was jurisdiction under Ohio Revised Code § 2307.382(A)(4), which is not applicable to this case. *Hoover v. Recreation Equip. Corp.*, 792 F. Supp. 1484 (N.D. Ohio 1991), discusses Ohio long-arm jurisdiction purely in terms of the due process requirements. *Michigan Nat'l Bank v. Quality Dinette*, 888 F.2d 462 (6th Cir. 1989), analyzes the Michigan long-arm statute. While *Executone of Columbus, Inc. v. Inter-Tel, Inc*., 2006 U.S. Dist. LEXIS (S.D. Ohio Oct. 24, 2006), supports Plaintiffs' position, its persuasive authority is substantially undercut by its persistent reference to *LSI Industries* as a Sixth Circuit case. Furthermore, *Executone* was decided after *Brunner*, but does not cite it.

There may be a basis for exercise of general jurisdiction by Ohio courts (and derivatively Ohio federal courts) over foreign corporations apart from Ohio Revised Code § 2307.382 (A)(1) and (2), but no such authority has been cited to this Court, which declines to exercise general jurisdiction over BSI on the basis of those two statutes.

In support of its assertion that this Court has specific jurisdiction over BSI, Plaintiffs assert that it should be held to be a successor-in-interest of "Sourdillon" and "Sourdillon's" contacts with Ohio should be imputed to it (Brief in Opposition, Doc. No. 13, at 9-13.) Facts said to be relevant are BSI's creation of a subsidiary with the Sourdillon name, its website admission that is acquired "The Sourdillon Group," and its current operation, though an affiliate, of the manufacturing facility in France which made the valves in suit. Based on the facts cited, the Court has no doubt that the manufacturer of the valves who contracted to supply them in Ohio is amenable to specific

6

jurisdiction under Ohio Revised Code § 2307.382(A)(1) and (2) and that the amount of contact which the manufacturer had with Ohio is sufficient to satisfy the minimum contacts required for that exercise of jurisdiction to be constitutional under the Due Process Clause.. The question is whether the manufacturer's contact can be imputed to BSI.

BSI in reply offers refutation of the facts relied on by Plaintiffs. Under Ohio law[2], it says,

> The general rule in products liability is that a successor corporation's amenability to suit will depend on the nature of the transaction which gave rise to the change in ownership. Where the transfer is accomplished by means of a statutory merger or consolidation, the liability of the former corporation will be assumed by the new entity. Where there is merely a sale of a corporation's assets, the buyer corporation is not liable for the seller corporation's tortious conduct unless one of the following four exceptions applies:
>
> (1) the buyer expressly or impliedly agrees to assume such liability;
>
> (2) the transaction amounts to a de facto consolidation or merger;
>
> (3) the buyer corporation is merely a continuation of the seller corporation; or
>
> (4) the transaction is entered into fraudulently for the purpose of escaping liability.

*Hoover v. Recreation Equipment Corp.*, 792 F. Supp. 1484, 1492 (N.D. Ohio 1991), quoting *Flaugher v. Cone Automatic Machine Co.*, 30 Ohio St. 3d 60, 62, 507 N.E.2d 331 (1987). BSI notes that its purchase agreement for The Sourdillon Group excluded assumption of liabilities (BSI Reply, Doc. No. 21, at 7, citing FitzSimons Decl. ¶ 10.) To rebut that de facto merger theory, BSI relies on *Welco Industries, Inc., v. Applied Cos.*, 67 Ohio St. 3d 344, 617 N.E. 2d 1129 (1993). In that case, the Ohio Supreme Court opined:

> Although *Flaugher* was a products liability case, the rule and four traditional exceptions evolved in nonproducts cases involving contracts,

---

[2]The parties seem to agree that Ohio substantive law properly governs the issue of successor liability.

> tax liabilities, and shareholders' rights. *Flaugher, supra*, 30 Ohio St.3d at 68, 30 OBR at 172, 507 N.E.2d at 338 (A.W. Sweeney, J., dissenting); *Cyr, supra*, 501 F.2d at 1152; *Turner v. Bituminous Cas. Co.* (1976), 397 Mich. 406, 417-418, 244 N.W.2d 873, 878. In nonproducts cases, the liability of the successor has usually depended on whether the transaction was a merger (liability imposed by statute), de facto merger (liability imposed by common law), or cash-for-assets transaction (no liability). *Turner, supra,* 397 Mich. at 419-420, 244 N.W.2d at 879.
>
> A de facto merger is a transaction that results in the dissolution of the predecessor corporation and is in the nature of a total absorption of the previous business into the successor. *Flaugher, supra*, 30 Ohio St.3d at 71, 30 OBR at 175, 507 N.E.2d at 340 (A.W. Sweeney, J., dissenting). A de facto merger is a merger in fact without an official declaration of such. The hallmarks of a de facto merger include (1) the continuation of the previous business activity and corporate personnel, (2) a continuity of shareholders resulting from a sale of assets in exchange for stock, (3) the immediate or rapid dissolution of the predecessor corporation, and (4) the assumption by the purchasing corporation of all liabilities and obligations ordinarily necessary to continue the predecessor's business operations.

67 Ohio St. 3d at 347, 349.  Plaintiffs cite no facts which would bring this case within the Ohio de facto merger doctrine.  Nor do they allege that the asset purchase transaction was entered into fraudulently.

The Ohio Supreme Court expressly stated its rationale for not expanding the liability of successor corporations in asset purchase situations:

> However valid the justifications for expanding the liability of successor corporations in products liability cases, those justifications do not apply here. Unlike tort law, which is guided largely by public policy considerations, contract law looks primarily to the intentions of the contracting parties. See *Victorson v. Bock Laundry Machine Co.* (1975), 37 N.Y.2d 395, 401, 373 N.Y.S.2d 39, 41, 335 N.E.2d 275, 277. The concerns for predictability and free transferability in corporate acquisitions that led this court to decline to expand the test for tort successor liability in Flaugher are even more compelling where the claim is in contract. To expand the mere-continuation exception to a contractual claim would virtually negate the difference between an asset purchase and a stock purchase. Courts would be forced to look beyond the surface of any asset purchase to determine the extent of shared features between predecessor and successor in order to decide whether liability should attach to contractual obligations that were explicitly excluded from the transaction. The sale of a corporation's  assets is an important tool in raising liquid capital to pay off  corporate debts. A court-imposed

8

> expansion of contractual liability of successor corporations beyond the traditional exceptions would unnecessarily chill the marketplace of corporate acquisitions. For these reasons, we decline to expand the traditional exceptions to the general rule of nonliability of successor corporations, . . .

*Id*. at 348-349.  That rationale seems completely applicable to this case.

For these reasons, Burner Systems International, Inc,, is not subject to personal jurisdiction in this Court.  As to that Defendant, the Amended Complaint will be dismissed without prejudice for lack of personal jurisdiction.

**Delta U.S. (Springbok) LLC**

\`     Delta U.S. also seeks dismissal for lack of personal jurisdiction.

This Court cannot exercise general personal jurisdiction over Delta U.S. for the same reasons as it cannot exercise such jurisdiction over Burner Systems International, Inc., set forth above.

Delta U.S. asserts it is not subject to specific personal jurisdiction because it did not manufacture the valves in question and ship them to Ohio.  Plaintiffs respond by pointing to documents with the return address of Sourdillon, Inc.(admittedly a former name of Delta U.S.) in Ringgold, Georgia, indicating, inter alia, the opening of a manufacturing plant in Georgia, acting as agent for the manufacturing facilities of Sourdillon in France, etc.  Delta U.S. admits that it was an "affiliate" of Sourdillon S.A. in France and that it was indeed incorporated for that purpose.  In reply. Delta U.S. argues:

> Delta US believes that Plaintiffs mischaracterize the exhibits to the declaration offered in opposition to Delta US's motion to dismiss and read the exhibits out of context.  Delta US also believes that Plaintiffs have not established the proper evidentiary foundation to have the exhibits introduced into evidence. Delta US, however, respectfully suggests that the Court need not resolve the personal jurisdiction issue because Plaintiffs' lawsuit is subject to dismissal on the other grounds set forth in the motion to dismiss.

(Reply, Doc. No. 47, at 2, n.1.)  However, the Court must first decide whether it has jurisdiction before it can decide a merits motion such as the Fed. R. Civ. P. 12(b)(6) motion which Delta U.S. has also filed.[3]  The documents from Delta U.S. filed by Plaintiffs provide at least a prima facie basis for concluding that this case arises, at least in part, out of Delta U.S.'s supplying or contracting to supply goods in Ohio.  Thus Delta U.S.'s motion to dismiss for lack of personal jurisdiction is denied without prejudice to its renewal as part of a motion for summary judgment after sufficient discovery.

**Sourdillon, Inc.  (Sourdillon BSI)**

Sourdillon BSI asserts this Court cannot exercise personal jurisdiction over it either generally or specifically (Doc. No. 34).

This Court cannot exercise general personal jurisdiction over Sourdillon BSI for the same reasons  as it cannot exercise such jurisdiction over Burner Systems International, Inc., set forth above.

With respect to specific jurisdiction, Sourdillon BSI asserts it was not in existence at the time the valves in question were manufactured, sold, shipped to Ohio, and incorporated into refrigerators.  In fact, it asserts without contradiction that it was first incorporated in 2001 as a wholly-owned subsidiary of BSI under the name SUS Acquisition Corp. in order to purchase certain assets of Delta U.S. in 2002.  It did not expressly assume any of the liabilities of Delta U.S. as part of that acquisition.

---

[3]A court may not assume jurisdiction hypothetically and proceed to the merits "because it carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers."  *United States v. Webb,* 157 F.3d 451 (6th Cir. 1998), quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 118 S. Ct. 1003, 1012, 140 L. Ed. 2d 210 (1998).

Under Ohio law, the contacts of the manufacturer of the valves can no more be imputed to Sourdillon BSI than to its corporate parent, BSI. Sourdillon's motion to dismiss for lack of personal jurisdiction is granted.

**Delta Electrical and Engineering Holdings, B.V.**

Delta Electrical and Engineering Holdings, B.V., ("DEEH") as recipient of the assets of Delta France (Springbok) S.A. ("DFS"), fka Sourdillon S.A. and Sourdillon Airindex S.A. moves to dismiss this action under the doctrine of forum *non conveniens*.

The factors to be considered in deciding a forum non conveniens motion are still those adopted by the Supreme Court in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501 (1947):

> If the combination and weight of factors requisite to given results are difficult to forecast or state, those to be considered are not difficult to name. An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. n8 But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.
>
> Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must

>govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Id.* at 508-509.

Weighing all of those factors makes it clear that Ohio is a much more convenient forum than DEEH's suggested alternative of England. This is the forum in which the allegedly defective valves were incorporated into refrigerators and in which the recall in issue was made. Presumably evidence will be needed from employees of New Nucold about the recall and they are much more likely to be within subpoena range of this Court than of an English court. From what the Defendants collectively assert, it may be that all – but certainly a large proportion of – the valves in suit were manufactured in France where English courts have no power to compel the attendance of witnesses. While it may be cheaper to fly French witnesses to England than to Ohio, as DEEH contends, their testimony would likely have to be taken in France regardless of the forum. Plaintiffs easily refute DEEH's notion that an English court would have to reevaluate this Court's determination that it has personal jurisdiction over DEEH since DEEH has voluntarily submitted to personal jurisdiction here. See Fed. R. Civ. P. 12(h).

DEEH's motion to dismiss on grounds of forum *non conveniens* is denied.

### Timeliness of the Complaint

Seeking relief under Fed. R. Civ. P. 12(b)(6), Defendants raise various claims about the timeliness of the Complaint in this case. Because the Court does not have personal jurisdiction of Defendants BSI and Sourdillon BSI, it declines (as it must) to consider their timeliness claims.

The purpose of Fed. R. Civ. P. 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *Mayer*

12

*v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993), citing *Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir. 1987).  Put another way, "The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or merits of the case."  Wright & Miller, FEDERAL PRACTICE AND PROCEDURE:  Civil 2d §1356 at 294 (1990).

The test for dismissal under Fed. R. Civ. P. 12(b)(6) has recently been re-stated by the Supreme Court:

> Factual allegations must be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1965 (2007), citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004)("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g., Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)(" Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").
>
> [W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, " 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.' " 5 Wright & Miller § 1216, at 233-234 (quoting *Daves v. Hawaiian Dredging Co.*, 114 F.Supp. 643, 645 (D.Hawai 1953) ); see also *Dura [Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005),, at 346, 125 S.Ct. 1627; *Asahi Glass Co. v. Pentech Pharmaceuticals, Inc* ., 289 F.Supp.2d 986, 995 (N.D.Ill.2003) (Posner, J., sitting by designation) ("[S]ome threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase").

*Bell Atlantic*, 127 S. Ct. at 1966; *see also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio,* 502 F.3d 545 (6th Cir. 2007). To survive a motion to dismiss under Rule 12(b)(6), the allegations in a complaint "must do more than create speculation or suspicion of a legally

cognizable cause of action; they must show *entitlement* to relief." *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008), quoting *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)(emphasis in original).

The timeliness claims Defendants make are all affirmative defenses. The Sixth Circuit has held that a statute of limitations defense may be raised and decided on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) when it is apparent on the face of the complaint. *Pierce v. County of Oakland,* 652 F.2d 671 (6th Cir. 1981); *Lundblad v. Celeste*, 874 F.2d 1097 (6th Cir. 1989).

**Convention on the International Sale of Goods (CISG)**

Defendants Delta U.S., DEEH, and Sourdillon Airindex S.A. assert that the Complaint herein is absolutely barred by the United Nations Convention on the International Sale of Goods ("CISG"). That treaty applies to sales of goods between parties whose places of business are in different contracting states if they are parties to the treaty. When it applies, the CISG assertedly bars claims based on a lack of conformity of the goods sold unless the buyer has given the seller notice of the defect within two years of the date of delivery, whether or not the purchaser had notice of the defect within that two-year period. Defendants reason that the Amended Complaint says the Plaintiffs incorporated the defective valves in refrigerators up to some unspecified date in 1997, so the time limit for notice expired not later than December 31, 1999. However, the Amended Complaint states Plaintiff notified Defendants of the defect when they learned of it from New Norcold sometime in 2001or 2002. Thus say Defendants, any claim based on the defect is barred.

Plaintiffs counter that this lawsuit is about breach of a contract for indemnification, not sale of goods. Furthermore, the CISG itself exempts from the two-year bar any defect of which the seller knew or "could not have been unaware" and there has as yet been no discovery on what the

14

manufacturer knew.

Defendants reply that Plaintiffs' legal distinction of indemnification from warranty makes no difference to the decision about whether the CISG applies.  As to the factual point, they claim that the Amended Complaint is defective in failing to allege that any of the manufacturing Defendants knew of the defect at the time of delivery and could not make that allegation consistent with Fed. R. Civ. P. 11.

The Court concludes that a decision on the asserted CISG bar is premature at the pleading stage.  The Court fails to understand why a plaintiff should be held to anticipate an affirmative defense and required, on penalty of dismissal, to plead with particularity facts necessary to avoid that affirmative defense before the defense has been raised.  Without deciding the legal question whether the CISG applies to indemnification obligations based on defects in goods delivered, the Court concludes that there is a (potential) disputed material question of fact if the manufacturer of the valves knew or "could not have been unaware" of the defect in the valves at the time they were delivered.  The parties obviously know much more about the defects, when they were discovered, how they were repaired, and so forth than the Court does at this stage.  It is more appropriate to resolve that set of questions after there has been an opportunity for discovery.

The motions to dismiss based on the CISG are denied.


**Laches**


As Plaintiffs have observed, the factual questions related to whether Plaintiffs' delay in bringing suit entitle Defendants to relief under the doctrine of laches cannot be properly resolved on  a motion to dismiss.  Defendants' motions to dismiss on this basis are denied.

**Statute of Limitations**

Defendants assert that Plaintiffs' claims are barred by the Ohio four-year statute of limitations applicable to breaches of contract. They note that in the Amended Complaint, Plaintiffs say they received notice of the claim of defects from New Nucold in 2001 and thus the four years would expire sometime in 2005. Alternatively, assuming the statute runs from the date in 2002 on which Plaintiffs notified Defendants of their intent to seek indemnification, the statute would have run sometime in 2006. However, this lawsuit was not filed until January, 2007.

Plaintiffs counter that the valve purchase agreements contain a provision that the "seller shall defend, indemnify and hold harmless purchaser against all damages, claims, or liabilities and expenses. . . ." They assert that they did not suffer any damages until they made the first payment to New Nucold on recall expenses in early 2003 and within four years of the filing date. They note that under Ohio law there can be separate obligations to indemnify against damages or claims or liabilities which might accrue on different dates.

The Court declines to decide the statute of limitations question at the pleading stage of this case. See Fed. R. Civ. P. 12(i). While it is tempting to resolve this question solely as a matter of law, the Court believes there are important factual questions which may bear on it, such as which Defendants received demands for indemnification at what times, whether they were given an opportunity to defend against New Nucold's claims, and so forth. Therefore the motions to dismiss on the basis of the statute of limitations will be denied without prejudice to renewal of that defense during the course of the litigation.

**Conclusion**

The Amended Complaint is dismissed without prejudice for lack of personal jurisdiction as against Burner Systems International, Inc., and Sourdillon BSI.  In all other respects, the pending motions to dismiss are denied.

The Magistrate Judge appreciates that this Decision disposes of a great deal of legal argument in short compass and that neither party may have anticipated the Court's analysis of the general jurisdiction question.  Without confessing error or openly inviting motions for reconsideration which rehash arguments already made, the Court is certainly open to being asked to consider points which it may have missed.

October 9, 2008.

                                                 s/ **Michael R. Merz**
                                                 Chief United States Magistrate Judge